AUSTIN FORD *vs* GARRETT LINEHAN.

Suffolk.   January 18, 1888. — March 2, 1888.

Present: MORTON, C. J., DEVENS, HOLMES, & KNOWLTON, JJ.

*Contract — Agency — Evidence.*

An only son without much property, who was his father's general agent for the
transaction of all his business, signed a contract in his own name for a large
amount of stone-work on his father's burial lot, told the latter about the con-
tract, and conferred with him during the progress of the work, nothing being
said about its being a gift to the father. The father, who had considerable
property, was seventy-three years old; had been confined to his house for five
years by sickness; had prior to his sickness had the idea of having this work
done, and had consulted his wife about it; and had signed an application for a
permit to do it. *Held,* that evidence of these facts would warrant a finding that
the son was acting as his father's agent in signing the contract and doing the
work.

CONTRACT to recover $629.75, $580 being for stone-work upon
the defendant's lot in Calvary Cemetery, under a written agree-
ment dated September 22, 1884, and signed by the plaintiff and
Denis A. Linehan, and $49.75 upon an account annexed, for work
done and materials furnished in connection therewith. Writ
dated September 2, 1885.

Trial in the Superior Court, before *Brigham*, C. J., who
allowed a bill of exceptions, in substance as follows:

The defendant, who was the father of Denis A. Linehan,
contended that he was not a party to the contract, and testi-
fied by deposition, in answer to questions put by the plaintiff's
counsel, that he had been confined to his house for about five
years with rheumatism; that he was the owner of a lot in
Calvary Cemetery; that he had not authorized anybody to put
any stone-work, such as curbing, posts, and steps, on that lot;
" but I would if I was able to go out. Myself and mother was
about fixing that lot with curbing around it, when I got sick.
That is all I done with it, except that my son told me afterwards
he had done it. He did not tell me he was going to do it, and
asked me nothing about it. He done it himself"; that he could
not tell when he heard for the first time that the stone was
being put into the lot, or when his son told him about it; that he
did not know what his son told him, " except that he settled

with the man to put a curb around the burial lot," and that he said it was Ford; that his son stated the amount, but he did not remember it, it was not a thousand dollars; that his son did it of his own accord, and did not tell him about it until he had done it; that after the work was done, his son "said it was not done right, that they appointed another lot to be made like it, that it was not done according to agreement"; that when his son told him that he had made a contract with Ford he did not know what he said to him, "I am so forgetful that I don't remember"; that it was his intention at that time to improve his lot; that he owned three houses; that his son looked after his houses, collected the rents, &c.; that he did not allow his son to do anything the latter saw fit for him, and that when his son "put an awning over the store without my knowledge and consent, and I did not approve of it, he paid for it himself"; and that his son purchased the burial lot for him. On cross-examination the defendant testified that he was about seventy-three years old; that when he spoke of "mother" he meant his wife; that he never promised to pay for the stone-work on his lot; that he never authorized his son to make any agreement that he should pay for such stone-work; that he did not know of his son's contracting with Ford before the contract was made; that after the contract was made with Ford he did not agree, promise, or intend to pay Ford if he performed the contract, and that Ford did not ask him to pay; and that he had but one son.

Denis A. Linehan, called by the defendant, testified that he procured from his father, the defendant, and delivered to Ford, an application addressed to the superintendent for a permit to do the work as required by the by-laws of Calvary Cemetery; that the plaintiff had never in any conversation with him, or to his knowledge, made any claim or demand on the defendant for payment; and that he intended to put the stone-work on the lot and pay for it out of his own pocket; and that he was in the grocery business.

On cross-examination, he testified that the plaintiff had never seen the defendant; that he had told the plaintiff what his father's name was before and at the time the contract was signed; that he attended to all his father's business; that his father owned the burial lot; that his father had never author-

ized him to put the curbing around it, but that he told his father that he was doing it; that he himself was to pay for it; that he spoke to his father about the work not very often, but spoke to him oftener after the trouble commenced; that he told his father that he had signed the agreement with the defendant to put the stone-work on the lot, what the price and style were to be, and when the work was to commence and finish; that he did not show his father the contract, did not read it to him, nor tell him the substance of it; that he told his father all about the trouble with the defendant; that his father, as a matter of fact, left the whole thing to him; that his father did not disapprove of anything that he did; that he never stated to his father that it was going to be a gift; and that he had no property except his business.

It appeared that the stone-work was placed on the lot in June or July, 1885, and that on July 25, 1885, the plaintiff sent to Denis A. Linehan a bill entitled " Denis A. Linehan to Austin Ford, Dr.," for $580 for the stone-work on the lot.

The defendant asked the judge to rule that there was no evidence which would warrant the jury in finding that the defendant was a party to the contract; but the judge refused so to rule, and submitted the case to the jury with instructions not excepted to. The jury found for the plaintiff; and the defendant alleged exceptions.

*J. A. Maxwell*, for the defendant.

*T. F. Maguire*, for the plaintiff.

MORTON, C. J. The written contract for the work which is sued for was signed by the son of the defendant; but if the plaintiff can prove that in contracting for the work the son was acting as the agent of the defendant, this action can be maintained. Whether he was so acting, is a question of fact for the jury, and we are of opinion that there was evidence at the trial which was properly submitted to them upon this issue.

It appeared that the defendant was seventy-three years old, and had been confined to his house for five years by rheumatism; that he was a man of considerable property; that he was the owner of the lot in the cemetery on which the work was done; and that before the work was begun he signed an application for a permit to do it, addressed to the superintendent of

the cemetery. There was evidence tending to show that the son had very little property, that he told the defendant of his contract with the plaintiff, and conferred with the defendant from time to time during the progress of the,work; that he was an only son, and his father's general agent for the transaction of all his business affairs; that the defendant, before he was taken sick, had in his mind the idea of putting curbing about his lot, and consulted with his wife about it; and that neither during the work nor after it was completed was anything said between the father and the son to show that it was intended by the latter as a gift to his father. The circumstances of the parties make it very improbable that he would or could make so large a gift.

All the evidence points to the inference that the son was acting for his father, and that both so understood it; and we think the jury might fairly draw this inference, notwithstanding the testimony of the defendant and his son to the contrary. They saw the witnesses, and could best judge of the credit to which they were entitled.                            *Exceptions overruled.*